1  SPERTUS, LANDES & JOSEPHS, LLP
   James W. Spertus (SBN 159825)
2  Payton Lyon (SBN 305763)
   1990 South Bundy Dr., Suite 705
3  Los Angeles, California 90025
   Telephone: (310) 826-4700
4  Facsimile: (310) 826-4711
   jspertus@spertuslaw.com
5  plyon@spertuslaw.com

6  Attorneys for Plaintiff Helen Abascal

7

8              UNITED STATES DISTRICT COURT

   CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
9

10 HELEN ABASCAL,                    Case No.

11              Plaintiff,           **COMPLAINT FOR:**

12      v.                           (1)  42 U.S.C. § 1983 (Fourth
                                          Amendment – Unlawful
13 COUNTY OF LOS ANGELES, a              Detention and Arrest)
   public entity; LOS ANGELES
14 COUNTY SHERIFF'S                  (2)  42 U.S.C. § 1983 (Fourth
   DEPARTMENT, a public entity;          Amendment – Excessive Force)
15 DEPUTY HERNAN SEBASTIANI,
   an individual; DEPUTY DAVID      (3)  42 U.S.C. § 1983 (Fourth
16 ALBARRAN, an individual;             Amendment – Failure to
   DEPUTY JUAN ZAMORA, an                Intervene)
17 individual; DEPUTY ROLANDO
   IGLESIAS, an individual;         (4)  42 U.S.C. § 1983 (Fourth
18 SERGEANT MARCOS ROSALES,             Amendment – Malicious
   an individual; AND DOES 1-20,        Prosecution)
19 INCLUSIVE,
                                    (5)  42 U.S.C. § 1983 (Fifth and
20              Defendants.              Fourteenth Amendments – Due
                                         Process)
21
                                    (6)  42 U.S.C. § 1983 (Municipal
22                                       Liability – Unconstitutional
                                         Custom, Practice, or Policy)
23
                                    (7)  42 U.S.C. § 1983 (Municipal
24                                       Liability – Failure to Train)

25                                  (8)  42 U.S.C. § 1983 (Municipal
                                         Liability – Ratification)
26
                                    (9)  Battery
27
                                    (10) Negligence
28
                                    (11) Violation of Cal. Civil Code §
                                         52.1

                                    **DEMAND FOR A JURY TRIAL**

Spertus, Landes & Josephs, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

## **COMPLAINT FOR DAMAGES**

COMES NOW, Plaintiff HELEN ABASCAL and complains, avers, and alleges against the County of Los Angeles (the "COUNTY"); the Los Angeles County Sheriff's Department ("LASD"); LASD DEPUTIES HERNAN SEBASTIANI, DAVID ALBARRAN, JUAN ZAMORA, and ROLANDO IGLESIAS; SERGEANT MARCOS ROSALES; and Does 1-10 inclusive as follows:

## **INTRODUCTION**

1.    This civil rights action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution in connection with the detention and arrest of HELEN ABASCAL on August 12, 2022.

2.    The Defendants are liable under the Constitution of the United States pursuant to the Fourth and Fourteenth Amendments, in conjunction with 42 U.S.C. § 1983.  They are also liable under California state law pursuant to Cal. Gov't Code §§ 815.2(a) and 820(a), and Cal. Civil Code § 52.1.

3.    Defendants DEPUTIES HERNAN SEBASTIANI, DAVID ALBARRAN, JUAN ZAMORA, and ROLANDO IGLESIAS (the "DEPUTY DEFENDANTS") detained MS. ABASCAL without reasonable suspicion and arrested her without probable cause while she was in the middle of a public street with her hands raised, crying for help.

4.    Following her unlawful detention and arrest, MS. ABASCAL was sitting in the middle of the street handcuffed with her hands behind her back, crying, and obviously in distress.  MS. ABASCAL is a petite woman who posed no threat to anyone.  Without any provocation or fear for his safety, Defendant DEPUTY SEBASTIANI walked up to MS. ABASCAL and without saying a word or taking any steps to de-escalate the situation or talk to MS. ABASCAL, used excessive and unreasonable force to: (1) jerk MS. ABASCAL upright from

Spertus, Landes & Josephs, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

1

a seated, handcuffed, and secure position; (2) swing her body in the air; and (3) slam her to the ground face-first. DEPUTY SEBASTIANI's aggression knocked MS. ABASCAL unconscious and caused substantial injuries to MS. ABASCAL's head, face, and body.

5. Defendants DEPUTIES ALBARRAN, ZAMORA, and IGLESIAS failed to intervene in or thwart DEPUTY SEBASTIANI's use of force and engaged in other acts and omissions at the time of the incident.

6. In fact, DEPUTIES ALBARRAN, ZAMORA, and IGLESIAS, SERGEANT ROSALES, and DOES 1-10 united to cover up DEPUTY SEBASTIANI's misconduct by making false statements and producing false reports that concealed DEPUTY SEBASTIANI's attack of MS. ABASCAL and portrayed him as the victim of an assault by MS. ABASCAL.

7. DEPUTIES SEBASTIANI, ALBARRAN, ZAMORA, AND IGLESIAS, along with SERGEANT ROSALES, arrested MS. ABASCAL for a felony violation of Cal. Penal Code § 69 (resisting an executive officer) despite lacking probable cause for such an arrest, presented false and misleading facts to the Los Angeles County District Attorney's Office, and withheld other material facts, all in support of bogus charges that were designed to cover up and disguise the misconduct of the DEPUTY DEFENDANTS, which resulted in a meritless criminal proceeding against MS. ABASCAL that was ultimately dismissed by the Los Angeles County District Attorney.

8. Defendants COUNTY OF LOS ANGELES and DOES 11-20, inclusive, also caused various injuries to MS. ABASCAL and are liable under federal law and under the principles set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

9. This action is in the public interest, as MS. ABASCAL seeks by means of this civil rights action to hold accountable those responsible for violating her rights, and the COUNTY OF LOS ANGELES' custom, practice,

Spertus, Landes & Josephs, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

and policy of violating such rights, as well as its failure to train, its ratification of misconduct, and its policy of inaction in the face of these violations.

## THE PARTIES

10.    At all relevant times, Plaintiff HELEN ABASCAL was an individual living in Los Angeles County, California.  MS. ABASCAL is a petite, young, Latina woman weighing approximately 100 pounds.

11.    Defendant COUNTY OF LOS ANGELES (the "COUNTY") is and was a duly organized public entity, form unknown, existing under the laws of the State of California.  The COUNTY is a chartered political subdivision of the State of California that is within this judicial district with the capacity to be sued. The COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Los Angeles County Sheriff's Department.  At all relevant times, the COUNTY was responsible for ensuring that the actions, omissions, policies, procedures, practices, and customs of the Los Angeles County Sheriff's Department and its employees and agents complied with the laws of the United States and the State of California.  At all relevant times, the COUNTY was the employer of the LASD DEFENDANTS.

12.    Defendant LOS ANGELES COUNTY SHERIFF'S DEPARTMENT (the "LASD") is a law enforcement agency serving certain unincorporated areas of Los Angeles County, including Altadena, California.  It is the only law enforcement agency serving Altadena, and it maintains a station in Altadena located at 780 East Altadena Drive.  LASD is a "public entity" within the definition of Cal. Gov't Code § 811.2.  At all relevant times, LASD was a local government entity, organized and existing under the laws of California, an agency of the COUNTY, and responsible for ensuring that the actions, omissions, policies, procedures, practices, and customs of its employees complied with the laws of the United States and the State of California.

Spertus, Landes & Josephs, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

3

13.     At all relevant times, Defendant DEPUTY HERNAN SEBASTIANI ("SEBASTIANI") was a duly appointed LASD deputy and/or employee or agent of the COUNTY and the LASD, subject to the oversight and supervision of the COUNTY'S elected and non-elected officials.  At all relevant times, SEBASTIANI acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of the COUNTY, the LASD, and under color of the statutes and regulations of the State of California. At all relevant times, SEBASTIANI acted within the course and scope of his employment as an LASD deputy.  On information and belief, SEBASTIANI is and was at all times a resident of this judicial district.

14.     At all relevant times, Defendant DEPUTY DAVID ALBARRAN ("ALBARRAN") was a duly appointed LASD deputy and/or employee or agent of the COUNTY and the LASD, subject to the oversight and supervision of the COUNTY'S elected and non-elected officials.  At all relevant times, ALBARRAN acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of the COUNTY, the LASD, and under color of the statutes and regulations of the State of California. At all relevant times, ALBARRAN acted within the course and scope of his employment as an LASD deputy.  On information and belief, ALBARRAN is and was at all times a resident of this judicial district.

15.     At all relevant times, Defendant DEPUTY JUAN ZAMORA ("ZAMORA") was a duly appointed LASD deputy and/or employee or agent of the COUNTY, subject to the oversight and supervision of the COUNTY'S elected and non-elected officials.  At all relevant times, ZAMORA acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of the COUNTY, the LASD, and under color of the statutes and regulations of the State of California.  At all relevant times, ZAMORA acted within the course and scope of his employment as an LASD

*COMPLAINT FOR DAMAGES*

Spertus, Landes & Josephs, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

deputy.  On information and belief, ZAMORA is and was at all times a resident of this judicial district.

16.    At all relevant times, Defendant DEPUTY ROLANDO IGLESIAS ("IGLESIAS") was a duly appointed LASD deputy and/or employee or agent of the COUNTY and the LASD, subject to the oversight and supervision of the COUNTY'S elected and non-elected officials.  At all relevant times, IGLESIAS acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of the COUNTY, the LASD, and under color of the statutes and regulations of the State of California.  At all relevant times, IGLESIAS acted within the course and scope of his employment as an LASD deputy.  On information and belief, IGLESIAS is and was at all times a resident of this judicial district.

17.    At all relevant times, Defendant SERGEANT MARCOS ROSALES ("ROSALES") was a duly appointed LASD sergeant and/or employee or agent of the COUNTY and the LASD, subject to the oversight and supervision of the COUNTY'S elected and non-elected officials.  At all relevant times, ROSALES acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of the COUNTY, the LASD, and under color of the statutes and regulations of the State of California.  At all relevant times, ROSALES acted within the course and scope of his employment as an LASD employee.  On information and belief, ROSALES is and was at all times a resident of this judicial district.

18.    Deputies SEBASTIANI, ALBARRAN, ZAMORA, and IGLESIAS will be referred to below as "DEPUTY DEFENDANTS," and collectively with ROSALES as the "LASD DEFENDANTS."

19.    Defendants DOES 1-10, inclusive, were and are members of the LASD.  At all relevant times, these Defendants were acting under color of law within the course and scope of their duties as LASD members and/or employees.

Spertus, Landes & Josephs, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

5

*COMPLAINT FOR DAMAGES*

At all relevant times, Does 1-10, inclusive, were acting with the complete authority and ratification of their principal, the COUNTY.

20.    Defendants DOES 11-20, inclusive, were and are managerial, supervisorial, or policymaking employees of the LASD who were acting under color of law within the course and scope of their duties as supervisorial officers for the LASD.  Does 11-20, inclusive, were acting with the complete authority of their principal, the COUNTY.

21.    MS. ABASCAL is ignorant of the true names and capacities of DOES 1-10, inclusive, and therefore sues them by such fictitious names.  MS. ABASCAL will amend the Complaint to allege the true names and capacities of DOES 1-10 when the same has been ascertained.  MS. ABASCAL is informed and believes, and on that basis alleges, that DOES 1-10, inclusive, and each of them, are responsible in some manner for the occurrences alleged herein and proximately caused MS. ABASCAL's damages.

22.    On information and belief, DOES 1-10, inclusive, were at all relevant times residents of the County of Los Angeles, California.

23.    MS. ABASCAL is informed and believes, and on that basis alleges, the DEFENDANTS acted at all times mentioned herein as the actual and/or ostensible agents, employees, servants, or representatives of each other and, in committing the act or omissions alleged herein, acted within the scope of their authority as agents or employees, and with the permission and consent of each other.

24.    MS. ABASCAL is informed and believes, and on that basis alleges, that at all times mentioned herein all DEFENDANTS acted under color of law, statute, ordinance, regulations, and customs and usages of the State of California and the COUNTY.

*COMPLAINT FOR DAMAGES*

1

## JURISDICTION AND VENUE

25.    On February 6, 2023, MS. ABASCAL filed a tort claim with the COUNTY.  On May 4, 2023, MS. ABASCAL's claim was rejected by the County of Los Angeles.

26.    The Court has jurisdiction over MS. ABASCAL's federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4), because MS. ABASCAL's claims arise under the laws of the United States, including 42 U.S.C. § 1983 and the United States Constitution.  The Court has supplemental jurisdiction over MS. ABASCAL's state law claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

27.    Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), because all incidents, events, and occurrences giving rise to this action occurred within this district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

28.    MS. ABASCAL repeats and re-alleges each and every allegation of paragraphs 1 through 27, inclusive, as if fully set forth herein.

29.    On August 12, 2022, DEPUTY DEFENDANTS responded to an emergency call from a home address in Altadena, California.  The caller told the dispatcher that MS. ABASCAL had attempted to enter her property, thinking she was at a Pasadena restaurant where she worked and asking to speak to the manager, and thus was obviously disoriented.

30.    At the beginning of the call, the caller explained that MS. ABASCAL was "sitting in front of the house now crying."  By the end of the call, the caller explained that MS. ABASCAL had crossed the street and, as sirens approached, was "walking towards them right in the middle of the street right now with her hands up waving."

Spertus, Landes & Josephs, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

7

31. The DEPUTY DEFENDANTS arrived at the home at approximately the same time. SEBASTIANI, who is a very large man, approached the caller, while ZAMORA, IGLESIAS, and ALBARRAN, who are all also large men, approached MS. ABASCAL, who was standing in the street with her hands raised in the air and obviously in distress.

32. Based upon the caller's statements, and their own observations, ZAMORA, IGLESIAS, and ALBARRAN knew that MS. ABASCAL needed medical help and that, at worst, PLAINTIFF may have committed a misdemeanor trespass offense outside of their presence before they arrived. And yet, ZAMORA put MS. ABASCAL's hands behind her back, handcuffed her, and began to transport her forcibly to ALBARRAN'S patrol car.

33. MS. ABASCAL, realizing she was being arrested unlawfully, pulled away from ZAMORA'S grasp and, as ZAMORA released his grasp, fell into a seated position on the ground. She remained in obvious distress and said she had not done anything illegal. She sat in the middle of the street, hands handcuffed behind her back, yelling that she had not done anything illegal. It was obvious that this petite, disoriented, handcuffed, and seated young woman posed no threat to anyone. She remained in the middle of the street surrounded by ZAMORA, IGLESIAS, and ALBARRAN, and ALBARRAN placed his hands on MS. ABASCAL's upper arm to keep her in place. In this position, MS. ABASCAL was incapacitated and defenseless.

34. As ZAMORA, IGLESIAS, and ALBARRAN unlawfully detained MS. ABASCAL, SEBASTIANI then marched in MS. ABASCAL's direction.

35. SEBASTIANI made no attempt to talk to MS. ABASCAL, or to ZAMORA, IGLESIAS, or ALBARRAN. Nor did he make an attempt to de-escalate the situation.

36. Instead, SEBASTIANI pushed past ZAMORA, IGLESIAS, and ALBARRAN and grabbed and forcibly lifted MS. ABASCAL by her handcuffed

Spertus, Landes & Josephs, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

*COMPLAINT FOR DAMAGES*

arm, causing MS. ABASCAL to scream in pain as he lifted her by her arm, which was behind her back handcuffed to her other arm. SEBASTIANI began to swing MS. ABASCAL into the air in an obviously painful manner. MS. ABASCAL twisted her body in an attempt to bite SEBASTIANI's hand so that he would release her from the painful position and to prevent him from swinging her in the air.

37.     SEBASTIANI then swung MS. ABASCAL into the air with her feet flailing behind her and forcibly slammed her head-first into the pavement in a manner that could have easily killed her or broken her neck. SEBASTIANI's actions instantly knocked MS. ABASCAL unconscious.

38.     SEBASTIANI's use of force was unwarranted, excessive, and potentially deadly. It was also willful, wanton, oppressive, and unconscionable. It caused MS. ABASCAL to suffer severe injury, pain, suffering, fear, emotional distress, and permanent scarring to her face.

39.     SEBASTIANI knew immediately that MS. ABASCAL needed emergency medical attention. He called to ZAMORA, IGLESIAS, and ALBARRAN, "Get Fire, call Sarge!"

40.     Following SEBASTIANI's attack on MS. ABASCAL, LASD DEFENDANTS united to cover it up by making false statements and reports, including false written reports, that deliberately misstated the cause of MS. ABASCAL's injuries and falsely portrayed SEBASTIANI as the victim of an assault by MS. ABASCAL.

41.     For example, when IGLESIAS called for assistance, the Fire Department dispatch personnel asked IGLESIAS the source of MS. ABASCAL's injury and IGLESIAS responded "use of force." Upon hearing that description, ZAMORA signaled to IGLESIAS by making a slashing motions across his own neck with the intent of telling IGLESIAS not to mention "use of force" again. ZAMORA ensured that when he made this motion, he was not

9

*COMPLAINT FOR DAMAGES*

standing in front of IGLESIAS so the slashing motion would not be seen on IGLESIAS's body camera. The slashing motion, however, is captured clearly in the reflection of a patrol car window. On that same call, the Fire Department dispatch officer again asked IGLESIAS the source of MS. ABASCAL's injury and IGLESIAS lied by saying that it was "head trauma from a fall." This was a brazen lie done at the direction of and with the agreement of ZAMORA.

42. An ambulance came and took MS. ABASCAL to the Huntington Hospital. IGLESIAS rode in the ambulance with MS. ABASCAL. During the ambulance ride, MS. ABASCAL remained disoriented and could not understand or answer most questions asked of her. Despite MS. ABASCAL being disoriented, IGLESIAS repeatedly attempted to obtain an admission from MS. ABASCAL that she did something wrong. MS. ABASCAL told IGLESIAS to contact her parents and provided their names and addresses, but no one contacted them. One of the paramedics asked IGLESIAS how MS. ABASCAL suffered the injuries to her face. IGLESIAS lied again and said he was "not too sure" how she sustained her injuries and that he couldn't see how MS. ABASCAL was injured because it was "dark" and someone was standing in front of him. These statements were lies. IGLESIAS saw the incident clearly and the street where SEBASTIANI threw MS. ABASCAL face-first onto the pavement was well-lit by lights from the patrol cars.

43. SEBASTIANI, ALBARRAN, and ZAMORA filed written reports that falsely described the incident. None of the reports accurately or completely described what happened. Instead, the reports falsely stated that SEBASTIANI "guided" MS. ABASCAL to the ground. This was another brazen lie.

44. Neither the person who originally called 911 nor her grandmother, with whom she lived, wanted MS. ABASCAL to be prosecuted. The grandmother recognized that MS. ABASCAL needed help and said "she's not

Spertus, Landes & Josephs, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

10

*COMPLAINT FOR DAMAGES*

Spertus, Landes & Josephs, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

1   alright."  Both of them signed a form entitled "Complaint Refusal on Victim's

2   Request."

3       45.     To further cover up SEBASTIANI's and their own misconduct and

4   to silence MS. ABASCAL, LASD DEFENDANTS conspired to arrest MS.

5   ABASCAL for a felony violation of Penal Code § 69(a), resisting an executive

6   officer.

7       46.     In fact, MS. ABASCAL committed no crime.  While

8   SEBASTIANI would later claim MS. ABASCAL bit him through his heavy

9   canvas uniform shirt, the attempted bite caused no injuries and SEBASTIANI

10  laughed about it with an EMT at the scene.

11      47.     As a result of MS. ABASCAL's felony arrest, MS. ABASCAL was

12  forced to suffer the stress of unjust criminal court proceedings.  The Los Angeles

13  County District Attorney's Office filed a misdemeanor case against MS.

14  ABASCAL, based on the false written reports it reviewed.  The District

15  Attorney's Office later was informed of the true facts, including the body-camera

16  video, and agreed to dismiss the case.  The case was dismissed on March 9,

17  2023.

18                          **FIRST CLAIM FOR RELIEF**

19  **Fourth Amendment – Unlawful Detention and Arrest (42 U.S.C. § 1983)**

20         (MS. ABASCAL against LASD, LASD DEFENDANTS and DOES 1-10,

21                                    inclusive)

22      48.     MS. ABASCAL repeats and re-alleges each and every allegation of

23  paragraphs 1 through 47, inclusive, as if fully set forth herein.

24      49.     LASD DEFENDANTS were acting under color of state law and in

25  the course and scope of their employment as law enforcement officers for the

26  COUNTY.

27      50.     The Fourth Amendment of the United States Constitution, as

28  applied to LASD DEFENDANTS by the Fourteenth Amendment, provides for

the right of every person to be free from unreasonable searches and seizures. This includes the right of every person to not be detained without reasonable suspicion that one has committed a crime, as well as the right to not be arrested without probable cause that one has committed a crime.

51.    LASD DEFENDANTS had no objectively reasonable or specifically articulable factual basis to suspect that MS. ABASCAL was involved in the commission of any crime, nor did LASD DEFENDANTS have any confirmation that MS. ABASCAL had committed any crime or posed any threat to anyone.

52.    LASD DEFENDANTS detained MS. ABASCAL without reasonable suspicion and arrested her without probable cause.  The scope and manner of LASD DEFENDANTS' detention of MS. ABASCAL was unreasonable.

53.    In fact, LASD DEFENDANTS detained and arrested MS. ABASCAL for a felony violation of Penal Code § 69 to cover up their own misconduct, including the use of excessive force against MS. ABASCAL and the failure to de-escalate that use of force or intervene to prevent it.

54.    The conduct of LASD DEFENDANTS violated MS. ABASCAL's right to be free from unreasonable searches and seizures as guaranteed to MS. ABASCAL under the Fourth and Fourteenth Amendments to the United States Constitution.

55.    The conduct of LASD DEFENDANTS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of MS. ABASCAL and therefore warrants the imposition of exemplary and punitive damages in an amount according to proof.

56.    MS. ABASCAL brings this claim individually and seeks compensatory damages.  MS. ABASCAL also seeks attorneys' fees under this claim.

12

*COMPLAINT FOR DAMAGES*

Spertus, Landes & Josephs, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

Spertus, Landes & Josephs, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

**<u>SECOND CLAIM FOR RELIEF</u>**

**Fourth Amendment – Excessive Force (42 U.S.C. § 1983)**

(MS. ABASCAL against LASD, DEPUTY DEFENDANTS and

DOES 1-10, inclusive)

57.     MS. ABASCAL repeats and re-alleges each and every allegation of paragraphs 1 through 56, inclusive, as if fully set forth herein.

58.     DEPUTY DEFENDANTS were acting under color of state law and in the course and scope of their employment as law enforcement officers for the COUNTY.

59.     The Fourth Amendment of the United States Constitution, as applied to DEPUTY DEFENDANTS by the Fourteenth Amendment, provides for the right of every person to be free from unreasonable searches and seizures. This includes the right of every person to be free from the use of excessive force by peace officers.

60.     THE DEPUTY DEFENDANTS detained MS. ABASCAL without sufficient basis for the detention.

61.     SEBASTIANI then used excessive and unreasonable force, including deadly force, against MS. ABASCAL when he jerked her upright from a seated, handcuffed, and defenseless position and slammed her head-first into the pavement.

62.     DEPUTY DEFENDANTS failed to employ tactics to de-escalate the situation, failed to give MS. ABASCAL the time and space to understand the presence of law enforcement, failed to give MS. ABASCAL proper commands and the time to comply with those commands, and failed to give MS. ABASCAL a verbal warning prior to the use of unreasonable and excessive force even though it was feasible to do so.

63.     MS. ABASCAL was not an immediate threat to any person at the time of the use of excessive and unreasonable force by the DEPUTY

*COMPLAINT FOR DAMAGES*

DEFENDANTS. Further, there were reasonable alternatives available to the DEPUTY DEFENDANTS at the time.

64. The conduct of DEPUTY DEFENDANTS violated MS. ABASCAL's right to be free from the use of excessive force by law enforcement officers as guaranteed to MS. ABASCAL under the Fourth and Fourteenth Amendments to the United States Constitution.

65. As a direct result of the aforesaid acts and omissions of DEPUTY DEFENDANTS, MS. ABASCAL suffered severe injury, pain, suffering, fear, emotional distress, and permanent scarring to her face.

66. The conduct of DEPUTY DEFENDANTS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of MS. ABASCAL and therefore warrants the imposition of exemplary and punitive damages in an amount according to proof.

67. As a result of DEPUTY DEFENDANTS' misconduct, they are liable for MS. ABASCAL's injuries and other harms because they were integral participants in the use of excessive force.

68. MS. ABASCAL seeks compensatory damages for the physical injuries, pain, suffering, fear, and emotional distress caused by DEPUTY DEFENDANTS' misconduct. MS. ABASCAL also seeks attorneys' fees and costs under this claim.

## THIRD CLAIM FOR RELIEF

### Fourth Amendment – Failure to Intervene (42 U.S.C. § 1983)

69. MS. ABASCAL repeats and re-alleges each and every allegation of paragraphs 1 through 68, inclusive, as if fully set forth herein.

70. LASD DEFENDANTS were acting under color of state law and in the course and scope of their employment as law enforcement officers for the COUNTY.

Spertus, Landes & Josephs, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

*COMPLAINT FOR DAMAGES*

1    71.    LASD DEFENDANTS had an affirmative duty to intervene to

2    protect MS. ABASCAL's constitutional rights.

3    72.    DEPUTY DEFENDANTS each failed to prevent each other from

4    unlawfully detaining MS. ABASCAL when they first encountered her.

5    73.    Furthermore, DEFENDANTS ALBARRAN, ZAMORA, and

6    IGLESIAS understood that MS. ABASCAL did not pose a threat as she sat in the

7    middle of the street with her hands handcuffed behind her back.  They witnessed

8    SEBASTIANI use excessive force against MS. ABASCAL when he pushed past

9    them and picked up MS. ABASCAL—who was defenseless, handcuffed, and

10    stationary—by her arm without addressing her or attempting to de-escalate the

11    situation.

12    74.    DEFENDANTS ALBARRAN, ZAMORA, and IGLESIAS failed to

13    intervene to stop SEBASTIANI's continued use of excessive force against MS.

14    ABASCAL.  Because they failed to intervene, SEBASTIANI continued his use

15    of excessive force and slammed MS. ABASCAL head-first into the pavement.

16    75.    The LASD DEFENDANTS further failed to intervene to prevent

17    each other from creating and submitting false reports in order to cover up their

18    misconduct and violate MS. ABASCAL's rights to due process and to be free

19    from malicious prosecutions, as alleged below.

20    76.    The conduct of LASD DEFENDANTS was willful, wanton, and

21    malicious, and done with reckless disregard for the rights of MS. ABASCAL,

22    and therefore warrants the imposition of exemplary and punitive damages in an

23    amount according to proof.

24    77.    MS. ABASCAL seeks compensatory damages for the pain,

25    suffering, fear, and emotional distress caused by LASD DEFENDANTS'

26    misconduct.  MS. ABASCAL also seeks attorneys' fees and costs under this

27    claim.

28

Spertus, Landes & Josephs, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

15

Spertus, Landes & Josephs, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

**FOURTH CLAIM FOR RELIEF**

**Fourth Amendment – Malicious Prosecution (42 U.S.C. § 1983)**

(MS. ABASCAL against LASD, LASD DEFENDANTS and DOES 1-10, inclusive)

78.    MS. ABASCAL repeats and re-alleges each and every allegation of paragraphs 1 through 77, inclusive, as if fully set forth herein.

79.    LASD DEFENDANTS were acting under color of state law and in the course and scope of their employment as law enforcement officers for the COUNTY.

80.    The Fourth Amendment of the United States Constitution, as applied to LASD DEFENDANTS by the Fourteenth Amendment, provides for the right of every person to be free from malicious prosecutions.

81.    LASD DEFENDANTS were aware that the residents of the Altadena home recognized MS. ABASCAL needed help and confirmed orally and in writing that they were not desirous of a criminal prosecution.  LASD DEFENDANTS were further aware that *were* the residents of the Altadena home desirous of a criminal prosecution, at worst MS. ABASCAL could have been accused of a misdemeanor trespassing offense.

82.    Disregarding this, to cover up their own abuses of MS. ABASCAL's constitutional rights, and *to* silence and intimidate MS. ABASCAL, LASD DEFENDANTS united with a malicious intent to arrest MS. ABASCAL and initiate a felony criminal proceeding against her for defending herself against SEBASTIANI's attack.

83.    There was no probable cause for the arrest.

84.    The motive for initiating the criminal proceeding was malicious.

85.    The prosecution of MS. ABASCAL terminated in the dismissal of the case by the Los Angeles County District Attorney and the discharge of MS. ABASCAL from any criminal culpability.

16

86.    The conduct of LASD DEFENDANTS violated MS. ABASCAL's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

87.    The conduct of LASD DEFENDANTS was willful, wanton, and malicious, and done with reckless disregard for the rights of MS. ABASCAL, and therefore warrants the imposition of exemplary and punitive damages in an amount according to proof.

88.    MS. ABASCAL seeks compensatory damages for the pain, suffering, fear, and emotional distress caused by LASD DEFENDANTS' misconduct.  MS. ABASCAL also seeks attorneys' fees and costs under this claim.

## FIFTH CLAIM FOR RELIEF

**Fifth and Fourteenth Amendments – Due Process (42 U.S.C. § 1983)**

(MS. ABASCAL against the COUNTY, LASD, the LASD DEFENDANTS and DOES 1-10, inclusive)

89.    MS. ABASCAL repeats and re-alleges each and every allegation of paragraphs 1 through 88, inclusive, as if fully set forth herein.

90.    The LASD DEFENDANTS were acting under color of state law and in the course and scope of their employment as law enforcement officers for the COUNTY.

91.    The Fifth Amendment of the United States Constitution, as applied to the LASD DEFENDANTS by the Fourteenth Amendment, provides for the right of every person to not be deprived of liberty without due process of law.

92.    The LASD DEFENDANTS witnessed SEBASTIANI forcibly lift MS. ABASCAL from a seated position and slam her head-first into the ground. LASD DEFENDANTS were aware that this was a clear display of unwarranted, excessive, and potentially deadly force.

Spertus, Landes & Josephs, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

17

*COMPLAINT FOR DAMAGES*

93.     The LASD DEFENDANTS, nonetheless, falsely reported both that MS. ABASCAL "fell" to the ground and that SEBASTIANI "guided" her to the ground.  These were brazen lies, and on the basis of these lies a criminal prosecution was initiated against MS. ABASCAL.

94.     MS. ABASCAL has a constitutional, due process right to not be subjected to criminal charges on the basis of false and fabricated evidence.

95.     The false and fabricated reports by the LASD DEFENDANTS that MS. ABASCAL "fell" to the ground and/or was "guided" to the ground by SEBASTIANI does not comport with traditional ideas of fair play and decency. Indeed, such false and fabricated reports interfere with MS. ABASCAL's due process rights that are implicit in the concept of ordered liberty.

96.     The conduct of the LASD DEFENDANTS violated MS. ABASCAL's rights under the Fifth and Fourteenth Amendments to the United States Constitution.

97.     The conduct of the LASD DEFENDANTS was willful, wanton, and malicious, and done with reckless disregard for the rights of MS. ABASCAL, and therefore warrants the imposition of exemplary and punitive damages in an amount according to proof.

98.     MS. ABASCAL seeks compensatory damages for the pain, suffering, fear, and emotional distress caused by the LASD DEFENDANTS' misconduct.  MS. ABASCAL also seeks attorneys' fees and costs under this claim.

## SIXTH CLAIM FOR RELIEF

### Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)

(MS. ABASCAL against the COUNTY, LASD, and DOES 11-20, inclusive)

99.     MS. ABASCAL repeats and re-alleges each and every allegation of paragraphs 1 through 98, inclusive, as if fully set forth herein.

Spertus, Landes & Josephs, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

*COMPLAINT FOR DAMAGES*

100.  LASD DEFENDANTS were acting under color of state law and in the course and scope of their employment as law enforcement officers for the COUNTY.

101.  The acts of the LASD DEFENDANTS deprived MS. ABASCAL of her rights under the United States Constitution.

102.  The LASD DEFENDANTS acted pursuant to an expressly adopted official policy or longstanding practice or custom of the COUNTY.

103.  On information and belief, LASD DEFENDANTS were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the deprivation of MS. ABASCAL's rights.

104.  The LASD DEFENDANTS, the COUNTY, policymakers, and supervisors for Los Angeles County maintained, inter alia, the following unconstitutional customs, practices, and policies:

a.  Using excessive and unreasonable force on persons who do not pose a risk of imminent death or serious bodily injuries to others.

b.  Failing to use and exhaust reasonable alternatives to using force.

c.  Failing to give adequate commands and time to comply with those commands.

d.  Failing to give adequate verbal warning that force will be used and time to heed such a warning.

e.  Providing inadequate training regarding the use of force and use of reasonable alternatives to the use of deadly force.

f.  The handling of situations involving persons suffering from a mental crisis in accordance with their constitutional rights.

g.  Providing inadequate training and policies, including sustainment training, enforcement of the training when it does not exist,

*COMPLAINT FOR DAMAGES*

Spertus, Landes & Josephs, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

Spertus, Landes & Josephs, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

and re-training regarding the use of force, handling situations involving persons suffering from mental health crises, and de-escalation.

h. Employing and retaining as law enforcement officers including but not limited to the LASD DEFENDANTS whom the COUNTY knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force.

i. Inadequately supervising, training, controlling, assigning, and disciplining members of the LASD and other personnel, including the LASD DEFENDANTS involved in the excessive force used on MS. ABASCAL, whom the COUNTY knew or in the exercise of reasonable care should have known, had the propensities and character traits for abusing their authority and for using excessive force.

j. Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling misconduct by LASD members.

k. Ratifying unconstitutional conduct and failing to adequately discipline LASD DEFENDANTS for the above-mentioned categories of misconduct, including inadequate discipline and "slaps on the wrist," discipline that is so slight as to be out of proportion with the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct.

l. Announcing that unjustified use of force events are "within policy" even when they are later determined in court to be unconstitutional and refusing to discipline, terminate, and retrain LASD members involved in unconstitutional conduct.

m. Encouraging, accommodating, or facilitating a code of silence pursuant to which officers do not report other law enforcement officers' errors, misconduct, or crimes.  Pursuant to this code of silence, if

*COMPLAINT FOR DAMAGES*

questioned about an incident of misconduct involving another law enforcement officer, while following the code, the officer being questioned will claim ignorance of the other law enforcement officer's wrongdoing.

    n.    Maintaining a policy of inaction and an attitude of indifference towards law enforcement officer-involved use of force incidents, including by failing to discipline, retrain, investigate, terminate, and recommend law enforcement officers for criminal prosecution who participate in the violent use of force against unarmed and incapacitated civilians like MS. ABASCAL.

105.    These acts and omissions of the COUNTY caused MS. ABASCAL to suffer severe injury, pain, suffering, fear, emotional distress, and permanent scarring to her face.

106.    COUNTY officials had either actual or constructive knowledge of the deficient policies, practices, customs, and training.  Despite having such knowledge, the COUNTY condoned, tolerated, and through actions and inactions ratified unlawful policies and failed to adopt policies that would have prevented harm to MS. ABASCAL.  The COUNTY also acted with deliberate indifference to the foreseeable effects and consequences of these policies on MS. ABASCAL's constitutional rights and other individuals similarly situated.

107.    By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, the COUNTY acted with intentional, reckless, and callous disregard for MS. ABASCAL's constitutional rights.  Furthermore, the policies, practices, and customs implemented, maintained, and tolerated by the COUNTY were affirmatively linked to and were a significantly influential force behind the harms suffered by MS. ABASCAL.

108.    Accordingly, the COUNTY is liable for compensatory damages under 42 U.S.C. § 1983.  MS. ABASCAL also seeks attorneys' fees and costs under this claim.

Spertus, Landes & Josephs, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

21

## SEVENTH CLAIM FOR RELIEF

### Municipal Liability for Failure to Train (42 U.S.C. § 1983)

(MS. ABASCAL against the COUNTY and LASD, and DOES 11-20, inclusive)

109.   MS. ABASCAL repeats and re-alleges each and every allegation of paragraphs 1 through 108, inclusive, as if fully set forth herein.

110.   The LASD DEFENDANTS were acting under color of state law and in the course and scope of their employment as law enforcement officers for the COUNTY.

111.   The acts of the LASD DEFENDANTS deprived MS. ABASCAL of her rights under the United States Constitution.

112.   The COUNTY and LASD failed to properly and adequately train the LASD DEFENDANTS with regard to:

a.   The use of physical force and reasonable alternatives to the use of force.

b.   Proper communication and proper warning to avoid the use of force.

c.   Utilizing time, space, and distance methods to avoid using force.

d.   Techniques and procedures for de-escalation and dealing with situations in which a person is experiencing a mental health crisis.

113.   The training policies of the COUNTY and LASD were not adequate to train LASD members to handle the usual and recurring situations with which they must deal, including de-escalation techniques and goals to avoid the use of force.

114.   The COUNTY's and LASD's failure to train includes not providing adequate time and resources for LASD members to train, when training does exist, so that the LASD members can rely on that training during use of force incidents; not enforcing the basic training standards, when they do exist, that are

Spertus, Landes & Josephs, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

22

designed to prevent LASD members from using unreasonable and excessive force; not adequately providing recurring training so that LASD members do not lose necessary perishable skills; and not re-training LASD members who have used force in the field.

115.    COUNTY and LASD have no training or have inadequate training about the following topics:

a.    Effective communication that enables a peace officer to gain cooperation and voluntary compliance in stressful situations, including when confronting a hostile person.

b.    A law enforcement officer's responsibility to effectively communicate both in a professional demeanor and with words resulting in improved safety.

c.    Effective communication as a basic element of the use of force with the goal of law enforcement to gain voluntary compliance without resorting to physical force.

d.    Maintaining self-control, which is one of a peace officer's greatest assets in dealing with people and tense situations.

e.    Unreasonable fear includes overreactions to true potential threats as well as reactions to unreal threats based on prejudice or poor application of past experience.

f.    Unreasonable fear can be responsible for inappropriate responses such as a failure to respond or respond inappropriately (using unreasonable force).

g.    Unreasonable force occurs when the type, degree, and duration of force employed was neither necessary nor appropriate.

h.    The community expects that its peace officers will use only reasonable amounts of force.  Likewise, it expects that someone, including peace officers, will intervene if reasonable force is exceeded.

Spertus, Landes & Josephs, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

23

*COMPLAINT FOR DAMAGES*

Spertus, Landes & Josephs, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

    i.    Learning the behavior signs and indicators of various special conditions that assist LASD members in identifying the proper intervention to bring the situation to a quick and safe conclusion.

    j.    Recognition of cues and other indicators in order to make appropriate decisions regarding intervention strategies. To the extent possible, responding LASD members should observe the behavior exhibited by the person in an effort to determine what is happening and what might be prompting the observed behavior.

    k.    Responding LASD members should de-escalate the situation by introducing themselves and attempt to obtain the person's name; be patient, polite, calm, courteous and avoid overreacting; speak and move slowly and in a non-threatening manner; moderate the level of direct eye contact; remove distractions; demonstrate active listening skills; and provide sufficient awareness of retreat or escape should the situation become violent.

116. COUNTY and LASD were deliberately indifferent to the consequences of failing to provide adequate training to LASD members regarding the use of force, and better training would have prevented MS. ABASCAL's injuries.

117. The failure of the COUNTY to provide adequate training caused the deprivation of MS. ABASCAL's constitutional rights, that is, the COUNTY'S failure to train is affirmatively linked to and was a significantly influential force behind the harms suffered by MS. ABASCAL.

118. Accordingly, the COUNTY is liable for compensatory damages under 42 U.S.C. § 1983. MS. ABASCAL also seeks attorneys' fees and costs under this claim.

*COMPLAINT FOR DAMAGES*

**EIGHTH CLAIM FOR RELIEF**

**Municipal Liability – Ratification (42 U.S.C. § 1983)**

(MS. ABASCAL against the COUNTY and LASD, and DOES 11-20, inclusive)

119.   MS. ABASCAL repeats and re-alleges each and every allegation of paragraphs 1 through 118, inclusive, as if fully set forth herein.

120.   LASD DEFENDANTS were acting under color of state law and in the course and scope of their employment as law enforcement officers for the COUNTY.

121.   The acts of LASD DEFENDANTS deprived MS. ABASCAL of her rights under the United States Constitution.

122.   On information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning the acts of the LASD DEFENDANTS, ratified those acts and the bases for them.  On information and belief, the final policymaker knew of and specifically approved the acts of the LASD DEFENDANTS.

123.   On information and belief, COUNTY and LASD final policymakers knew MS. ABASCAL was not an immediate threat to any person at the time of the use of unreasonable and excessive force.

124.   On information and belief, a final policymaker has determined (or will determine) that the acts of the LASD DEFENDANTS were "within policy."

125.   The ratification by the COUNTY and LASD of the LASD DEFENDANTS' acts caused the deprivation of MS. ABASCAL's constitutional rights, that is, the COUNTY's and LASD's ratification is affirmatively linked to and was a significantly influential force behind the harms suffered by MS. ABASCAL.

126.   Accordingly, the COUNTY and LASD are liable for compensatory damages under 42 U.S.C. § 1983.  MS. ABASCAL also seeks attorneys' fees and costs under this claim.

Spertus, Landes & Josephs, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

*COMPLAINT FOR DAMAGES*

# NINTH CLAIM FOR RELIEF

**Battery (Cal. Gov't Code §§ 820, 815.2, and California Common Law)**

(MS. ABASCAL against ALL DEFENDANTS; LASD and LASD DEFENDANTS directly, and the COUNTY vicariously)

127.   MS. ABASCAL repeats and re-alleges each and every allegation of paragraphs 1 through 126, inclusive, as if fully set forth herein.

128.   DEPUTY DEFENDANTS, while working for the Los Angeles County Sheriff's Department, used unreasonable and excessive force against MS. ABASCAL, culminating in MS. ABASCAL being jerked upright from a seated, handcuffed, and defenseless position and slammed head-first into the pavement.

129.   MS. ABASCAL was knocked unconscious and suffered severe injury, pain, suffering, fear, emotional distress, and permanent scarring to her face.

130.    DEPUTY DEFENDANTS were either integral participants in this use of unreasonable and excessive force or failed to intervene to prevent it.

131.   DEPUTY DEFENDANTS had no legal justification for using such force, and their use of such force while carrying out their duties was unreasonable under the circumstances.

132.   At all relevant times, MS. ABASCAL did not pose an immediate threat of bodily injury to anyone, including the DEPUTY DEFENDANTS, no warning was given to MS. ABASCAL that force was going to be used against her, and less aggressive alternatives were available to the LASD DEFENDANTS.

133.   DEPUTY DEFENDANTS are liable pursuant to section 820 of the California Government Code, which provides that a public employee is liable for injuries caused by his acts or omissions to the same extent as a private person. The COUNTY is variously liable for the wrongful acts of the LASD DEFENDANTS pursuant to section 815.2 of the California Government Code,

Spertus, Landes & Josephs, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

26

which provides that a public entity is liable for injuries caused by its employees within the scope of employment if the employees' act would subject them to liability.

134.  The conduct of DEPUTY DEFENDANTS was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of MS. ABASCAL, entitling MS. ABASCAL to an award of compensatory and punitive damages.

## TENTH CLAIM FOR RELIEF

**Negligence (Cal. Gov't Code §§ 820, 815.2, and California Common Law)**

(MS. ABASCAL against ALL DEFENDANTS; LASD and LASD DEFENDANTS directly, and the COUNTY vicariously)

135.  MS. ABASCAL repeats and re-alleges each and every allegation of paragraphs 1 through 134, inclusive, as if fully set forth herein.

136.  Law enforcement officers, including LASD DEFENDANTS, have a duty to use reasonable care to prevent harm and injury to others.  This duty includes using appropriate tactics, giving appropriate commands, giving appropriate warnings, use of de-escalation techniques, and not using any force unless necessary, and using the least amount of force necessary.  These duties also include the LASD DEFENDANTS' responsibility to follow their training and policies, responsibility to ensure they are properly trained and equipped to perform their duties in accordance with the department policies, and responsibility to properly investigate and report on their use-of-force incidents.

137.  The LASD DEFENDANTS breached their duty of care.  On information and belief, the actions and inactions of the LASD DEFENDANTS were negligent and reckless, including but not limited to:

a.    The failure to properly and adequately assess the need to use force against MS. ABASCAL.

b.    The failure to utilize de-escalation techniques.

Spertus, Landes & Josephs, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

27

*COMPLAINT FOR DAMAGES*

c.    The scope and manner of the use of force against MS. ABASCAL.

d.    The failure to intervene on other LASD DEFENDANTS' use of unreasonable and excessive force.

e.    The failure to responsibly and properly investigate and report on the use of force against MS. ABASCAL.

138.    As a direct and proximate result of the LASD DEFENDANTS' conduct as alleged above, and other undiscovered negligent conduct, MS. ABASCAL was caused to suffer severe injury, pain, suffering, fear, emotional distress, and permanent scarring to her face.

139.    At all relevant times, MS. ABASCAL did not pose an immediate threat of bodily injury to anyone, including the LASD DEFENDANTS; no warning was given to MS. ABASCAL that force was going to be used against her, and less aggressive alternatives were available to LASD DEFENDANTS.

140.    LASD DEFENDANTS negligently caused physical and other injuries to MS. ABASCAL when they jerked her upright from a seated, handcuffed, and defenseless position and slammed her head-first into the pavement.

141.    LASD DEFENDANTS are liable pursuant to section 820 of the California Government Code, which provides that a public employee is liable for injuries caused by his acts or omissions to the same extent as a private person. COUNTY is variously liable for the wrongful acts of the LASD Defendants pursuant to section 815.2 of the California Government Code, which provides that a public entity is liable for injuries caused by its employees within the scope of employment if the employees' act would subject them to liability.

142.    MS. ABASCAL is entitled to an award of compensatory and punitive damages.

Spertus, Landes & Josephs, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

28

### ELEVENTH CLAIM FOR RELIEF

**Violation of Cal. Civ. Code § 52.1 and California Common Law**

(MS. ABASCAL against ALL DEFENDANTS; LASD and LASD DEFENDANTS directly, and the COUNTY and LASD vicariously)

143.   MS. ABASCAL repeats and re-alleges each and every allegation of paragraphs 1 through 142, inclusive, as if fully set forth herein.

144.   The Bane Act, the California Constitution, and California common law prohibit the detention and arrest of persons without reasonable suspicion and probable cause, respectively; the use of excessive force by law enforcement; and criminal prosecutions that are initiated without probable cause and with malicious intent.

145.   The above-mentioned civil rights violations implicate the Fourth Amendment to the United States Constitution, and "a successful claim . . . under the Fourth Amendment provides the basis for a successful claim under § 52.1." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105-06 (9th Cir. 2014).

146.   LASD DEFENDANTS violated MS. ABASCAL's rights under the Fourth Amendment to be free from unreasonable searches and seizures when they detained her without reasonable suspicion and arrested her without probable cause, used unreasonable and excessive force against her, and initiated a malicious felony criminal prosecution against her.  LASD DEFENDANTS specifically intended to violate MS. ABASCAL's constitutional rights as stated above, and/or acted with reckless disregard for MS. ABASCAL's constitutional rights.  Thus, MS. ABASCAL can recover against LASD DEFENDANTS for violation of the Bane Act.  *See Reese v. County of Sacramento*, 888 F.3d 1030, 1040-45 (9th Cir. 2018).

147.   MS. ABASCAL was caused to suffer severe injury, pain, suffering, fear, emotional distress, and permanent scarring to her face.  The conduct of LASD DEFENDANTS was a substantial factor in causing these things.

*COMPLAINT FOR DAMAGES*

Spertus, Landes & Josephs, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

148.   COUNTY is variously liable for the wrongful acts of the LASD DEFENDANTS pursuant to section 815.2 of the California Government Code, which provides that a public entity is liable for injuries caused by its employees within the scope of employment if the employees' act would subject them to liability.

149.   The conduct of LASD DEFENDANTS was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of MS. ABASCAL, entitling MS. ABASCAL to an award of compensatory and punitive damages.  MS. ABASCAL also seeks costs and attorneys' fees under this claim.

## **PRAYER FOR RELIEF**

WHEREFORE, HELEN ABASCAL requests entry of judgment in her favor against the COUNTY, LASD, SEBASTIANI, ALBARRAN, ZAMORA, IGLESIAS, ROSALES, and Does 1-20 inclusive, as follows:

1.   For compensatory damages according to proof at trial, under federal and state law, including reasonable attorney's fees, to obtain the dismissal of the bogus criminal charges brought to cover up the civil rights violations and misconduct of the individual defendants;

2.   For punitive and exemplary damages against the individual defendants in an amount to be proven at trial;

3.   For statutory damages;

4.   For reasonable attorneys' fees including litigation expenses;

5.   For costs of suit and interest incurred herein; and

Spertus, Landes & Josephs, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

*COMPLAINT FOR DAMAGES*

6.    For such other and further relief as the Court may deem just and proper.

Dated:  June 30, 2023          SPERTUS, LANDES & JOSEPHS, LLP

By:    _____
       James W. Spertus
       Payton Lyon
       Attorneys for Plaintiff Helen Abascal

Spertus, Landes & Josephs, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

31

*COMPLAINT FOR DAMAGES*